**Petition for Writ of Mandamus Conditionally Granted and Opinion filed December 15, 2011.**



In The

# Fourteenth Court of Appeals

———————

## NO. 14-11-01065-CV

———————

## IN RE ALERE WOMEN'S & CHILDREN'S HEALTH, LLC, Relator

ORIGINAL PROCEEDING
WRIT OF MANDAMUS
127th District Court
Harris County, Texas
Trial Court Cause No. 2010-09334

## O P I N I O N

On December 12, 2011, relator, Alere Women's & Children's Health, LLC, filed a petition for writ of mandamus in this court.  *See* Tex. Gov't Code § 22.221; *see also* Tex. R. App. P. 52.  Relator complains that respondent, the Honorable R.K. Sandill, presiding judge of the 127th District Court of Harris County, abused his discretion in striking eight of its expert witnesses.  Relator also filed a motion for a temporary stay of all proceedings until a final decision on its petition, which this court granted.  *See* Tex. R. App. P. 52.8(b), 52.10.  We now conditionally grant the writ.

**Background**

The underlying suit seeks damages for alleged nursing malpractice and is therefore subject to the Texas Medical Liability Act (TMLA). *See* Tex. Civ. Prac. & Rem. Code §§ 74.001—.507. The case proceeded under a scheduling order that set the case for trial during the two-week period beginning December 5, 2011. The scheduling order also required the real-party plaintiff, Adam Cortez, Individually and as Next Friend of Angela Cortez, to disclose his expert witnesses on or before September 5, 2011, and relator to disclose its experts by October 5, 2011.

On October 5, 2011, relator timely disclosed its expert witnesses. In that disclosure, relator stated that each of its experts had reviewed the preliminary report of the real party plaintiff's expert, Ezel Autrey, which had been served pursuant to section 74.351 of the TMLA. On December 6, 2011, the real party filed a motion to strike all of relator's expert witnesses on issues of negligence and causation. The real party claims that relator violated section 74.351(k) of the TMLA, which provides as follows:

> (k) Subject to Subsection (t), an expert report served under this section:
>
>> (1) is not admissible in evidence by any party;
>> (2) shall not be used in a deposition, trial, or other proceeding; and
>> (3) shall not be referred to by any party during the course of the action for any purpose.
>
>            \*               \*              \*
>
> (t) If an expert report is used by the claimant in the course of the action for any purpose other than to meet the service requirement of Subsection (a), the restrictions imposed by Subsection (k) on use of the expert report by any party are waived.

Tex. Civ. Prac. & Rem. Code § 74.351(k), (t).

The real party alleges in his motion that relator violated section 74.351(k) by disclosing Dr. Autrey's preliminary report to its testifying experts. Relator filed a response in opposition to the motion.

2

The case was called to trial on December 12, 2011. That morning, after hearing the argument of counsel, the trial court granted the real party's motion to strike relator's experts. Specifically, the trial court's order states that all eight of relator's expert witnesses designated to testify on the questions of negligence and causation are "excluded from testifying in the trial of this case as a sanction for [relator]'s violation of section 74.351(k)." Relator then filed this proceeding, asserting that the trial court abused its discretion and its order will prevent relator from presenting a defense at trial.

## Mandamus Standard

Courts will issue mandamus to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy available by appeal. *In re Prudential Ins. Co. of America*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). The adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments. *Id.* at 136. In evaluating benefits and detriments, we consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *Id.* We consider whether mandamus will spare litigants and the public "the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *Id.*

## Expert-Report Requirement under the Texas Medical Liability Act

Section 74.351(a) of the TMLA requires a claimant to file an expert report and a curriculum vitae of each expert listed in the report not later than the 120th day after the date the claim was filed. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a). An expert report required by section 74.351(a) is meant to serve two purposes: (1) to inform the defendant of the specific conduct the claimant is questioning and (2) to provide a basis for the trial court to conclude that the claim has merit. *Leland v. Brandal*, 257 S.W.3d 204, 206–07 (Tex. 2008). In this way, section 74.351 permits the trial court to serve as a "gatekeeper" by determining whether the expert report represents a good faith effort to inform of the

3

conduct called into question and permit the court to conclude whether the claim has merit. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Mettauer v. Noble*, 326 S.W.3d 685, 691 (Tex. App.—Houston [1st Dist.] 2010, no pet.). The expert report requirement "establishes a threshold over which a claimant must proceed to continue a lawsuit." *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005).

A sufficient expert report in a health care liability claim is not required to marshal and present all of the plaintiff's proof. *Am. Transitional Care Centers v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). The preliminary report is generally not admissible in evidence by any party; cannot be used in a deposition, trial, or other proceeding; and shall not be referred to by any party during the course of the action for any purpose unless the expert report is used by the claimant in the course of the action for any purpose other than to meet the service requirement of section 74.351(a). *See* Tex. Civ. Prac. & Rem. Code § 74.351(k), (t). In this proceeding, we are asked to consider the interpretation of section 74.351(k), and the sanctions imposed for its alleged violation.

## Statutory Interpretation

Statutory interpretation is a question of law. *In re Canales*, 52 S.W.3d 698, 701 (Tex. 2001). In construing a statute, our primary goal is to ascertain and effectuate the legislature's intent. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). To ascertain the legislature's intent, we must consider the statute as a whole, and not isolated provisions. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001).

In doing so, we begin with the statute' s plain language because we assume that the legislature tried to say what it meant and, thus, that its words are the surest guide to its intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc*., 996 S.W.2d 864, 865–66 (Tex. 1999). If the statute's language is unambiguous, its plain meaning will prevail. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). We may also consider the statute's objectives, the circumstances under which the statute was enacted, legislative history,

common law, former law, similar provisions, and the consequences of the statutory construction. *See* Tex. Gov't Code § 311.023(1)-(5).

It is a well-settled rule of statutory construction that we must presume that every word of a statute has been used for a purpose. *Laidlaw Waste Sys., Inc. v. Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995). Likewise, we must presume that every word excluded from a statute has been excluded for a purpose. *Id.* This rule complements another general statutory construction principle that courts should not insert words into a statute except to give effect to clear legislative intent. *Id.*

## Application

Here, section 74.351 does not state that a testifying expert may not review the preliminary expert report filed by the plaintiff. The statute expressly prohibits use in depositions, trials, or other proceedings and provides that it is not admissible and may not be referred to by any party, but the statute does *not* state that an expert may not review the report. We find no authority for the trial court's interpretation that section 74.351(k) prohibits such a review. Nor does the statute specify a penalty for its violation by a defendant. Section 74.351(k) is silent as to sanctions or any other penalty against the defendant. In contrast, the statute specifies the result if the plaintiff uses the preliminary expert report for any other purpose than to satisfy the gatekeeping function. *See* Tex. Civ. Prac. & Rem. Code § 74.351(t). In that event, the legislature specified that "the restrictions imposed by Subsection (k) on use of the expert report by any party are waived." *Id.* In addition, the statute provides for an award of attorney's fees to a defendant when a plaintiff fails to serve the preliminary report within the 120-day deadline. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b). In contrast, the legislature chose not to include a penalty against a defendant who violates section 74.351(k).

At the December 12, 2011, hearing, there was no acknowledgement or showing that the preliminary expert report had been "used in a deposition, trial, or other proceeding." *See* Tex. Civ. Prac. & Rem. Code § 74.351(k)(2). The trial court focused on subsection

5

(3) of section 74.351(k), which provides that the preliminary expert report "shall not be referred to by any party during the course of the action for any purpose." *Id.* § 74.351(k)(3). At the hearing, the court acknowledged that no cases discuss section 74.351(k)(3). The court expressed concern that relator's experts would refer to the preliminary report in their testimony. Relator agreed that if plaintiff's counsel asked his experts if they had seen the report, they would all admit that they had seen the report. There was no other indication that the experts would otherwise refer to the report in their testimony—other than in response to a question by the plaintiff. The trial court abused its discretion in determining that this testimony, to be elicited by plaintiff's counsel, would violate section 74.351(k).

## Death-Penalty Sanctions

Relator asserts that the order striking its experts is a death penalty sanction for which mandamus will lie.[1] In the discovery context, sanctions must be "just." *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex. 1991). A just sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party, and the sanction should be visited upon the offender. *Id.* The trial court must attempt to determine whether the offensive conduct is attributable to counsel only, to the party only, or to both. *Id.* Just sanctions must not be excessive. *Id.* In other words, a sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes, which include securing compliance with discovery rules, deterring other litigants from similar misconduct, and punishing violators. *Id.; Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992). The second prong of *TransAmerican* mandates that the trial court consider less stringent measures before settling on severe sanctions. *Id.; Chrysler Corp.*, 841 S.W.2d at 849. The record should contain some explanation of the appropriateness of the sanctions imposed. *See Chrysler*

---

[1] The real party disputes this contention and asserts that relator has other experts who "can" testify at trial. All the experts that relator designated for the express purpose of testifying about negligence and causation have been stricken. Thus, the sanction order amounts to a "death penalty" sanction.

*Corp.*, 841 S.W.2d at 852–53. A trial court abuses its discretion if it does not comply with these required procedural and substantive standards in imposing sanctions. *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 883 (Tex. 2003) (trial court abused its discretion in ordering that the specified portions of the witness statements be taken as established facts at trial as sanction for discovery abuse).

Our review of the record from the December 12, 2011, hearing in this case reveals the court did not consider lesser sanctions before imposing death penalty sanctions. The record does not contain any explanation of the appropriateness of the sanctions imposed. *See Chrysler Corp.*, 841 S.W.2d at 852–53. Even if we accepted the real party's contention that relator should not have permitted its experts to review the preliminary expert report, the trial court should have considered lesser sanctions to accomplish the same goal of prohibiting any reference to the preliminary report.

## Conclusion

We hold that the trial court abused its discretion in striking relator's expert witnesses on negligence and causation. Relator has no adequate remedy by appeal.[2] Accordingly, we conditionally grant relator's petition for writ of mandamus and direct the trial court to vacate its December 12, 2011, order striking relator's expert witnesses. The writ will issue only if the trial court fails to act in accordance with this opinion. This court's December 13, 2011, stay order is lifted so that the court may act in accordance with this opinion and proceed to trial.

PER CURIAM

Panel consists of Chief Justice Hedges and Justices Brown and Christopher.

---

[2] *See In re Kings Ridge Homeowners Ass'n, Inc.*, 303 S.W.3d 773, 785-86 (Tex. App.—Fort Worth 2009) (orig. proceeding) (holding that when a trial court deprives a party of expert testimony essential to the presentation of its case, trial is "rendered no more than an empty exercise," and there is no adequate remedy by appeal); *cf. Walker v. Packer*, 827 S.W.2d 833, 841 (Tex. 1992) (holding that remedy by appeal is inadequate where a party is required to "to try his lawsuit, debilitated by the denial of proper discovery, only to have that lawsuit rendered a certain nullity on appeal").